NO. 12-03-00274-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
DANNY DALE WEISINGER,                           §                 APPEAL FROM THE 349TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 HOUSTON COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Danny Dale Weisinger appeals his conviction of aggravated assault with a deadly weapon,
for which he was sentenced to imprisonment for twenty years. Appellant, proceeding pro se, raises
seven issues on appeal. We affirm. 
 
Background
            Appellant was charged by indictment with aggravated assault.


 Appellant pleaded “not
guilty,” and the matter proceeded to trial by jury. During a recess following the presentation of
evidence, but before jury argument, a juror approached the prosecuting attorney and attempted to
speak with her concerning the case. The matter was raised to the trial court prior to jury argument
as follows:
 
[Prosecuting Attorney]: Judge, one of the jurors – I don’t know his name, but one of the men jurors
when I went into my office was coming out of the men’s room on the basement floor. He was trying
to tell me something in regards to Lance Carr and his mother. He said, I know that I can’t talk to you. 
I was like, Well, you have to tell the Judge. So I don’t know. I just wanted to let the Court know.
 
[Appellant’s Counsel]: I don’t know. Apparently, she didn’t communicate with him.
 
THE COURT: All right.
 
[Prosecuting Attorney]: I recognize him if I see him, but I don’t know his name.
 
THE COURT: What will you propose that I do?
 
[Prosecuting Attorney]: I don’t believe –
 
[Appellant’s Counsel]: I don’t know. What are the options of the Court to do? Disable him if we feel
he’s disabled and use the alternate or –
 
THE COURT: Well, he tried to talk to you so you didn’t talk to him. So he violated the Court’s
instructions. If he tried to talk to one of the Court’s parties, but even then he knew that he was doing
it because he said that he – that, I can’t talk to you.
 
[Prosecuting Attorney]: I don’t know. He went to say it, and he said, “Oh, I can’t talk to you.”
 
THE COURT: Maybe he started to and then realized what he was about to do.
 
[Appellant’s Counsel]: I had an experience about two weeks ago when one of the jurors wanted to
approach us because – that’s because they recognized a person that they were scared of them, and if
that is the case, we disabled that juror.

              THE COURT: Uh-huh.
 
[Appellant’s Counsel]: You know, I’ll probably need to find out what he was trying to tell her.
 
THE COURT: That doesn’t sound like this. I don’t see anything to do right now except go forward. 
I am about to discharge the alternate because I don’t think that I keep the alternate after the jury
start[s] deliberations. I think that I will let the alternate sit through the argument but then send the jury
in and discharge the alternate.


            Ultimately, the jury found Appellant guilty as charged and assessed his punishment at
imprisonment for twenty years and a seven thousand dollar fine. The trial court sentenced Appellant
accordingly, and this appeal followed.
 
Juror Misconduct
            In his first issue, Appellant argues that the trial court erred in failing to discharge the juror
who attempted to converse with the prosecuting attorney. No person shall be permitted to converse
with a juror about the case on trial except in the presence and by the permission of the court. Tex.
Code Crim. Proc. Ann. art. 36.22 (Vernon 1981). When a juror converses with an unauthorized
person about the case, injury to the accused is presumed, and a new trial may be warranted. See
Quinn v. State, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997). However, the State may rebut this
presumption of harm. Id. In determining whether the State appropriately rebutted the presumption
of harm, appellate courts should defer to the trial court’s resolution of the historical facts and its
determinations concerning credibility and demeanor. Id. If it is shown that the case was not
discussed or that nothing prejudicial to the accused was said, then the appellant has not been injured
and the verdict will be upheld. See Alba v. State, 905 S.W.2d 581, 587 (Tex. Crim. App. 1995). 
            In the case at hand, the trial court, based on its exchange with the prosecuting attorney,
determined that the juror tried to speak to the prosecuting attorney, but that the prosecuting attorney
did not talk to the juror. Based on our review of the record, we conclude that it was reasonable for
the trial court to find that the juror attempted to initiate a conversation with the prosecuting attorney,
but, expressly realizing that such contact was forbidden, quickly and abruptly ended the
communication. We defer to the trial court’s resolution of historical facts. Inasmuch as the record 
can be reasonably construed to reflect that nothing prejudicial to Appellant was said, we hold that
the trial court did not err in concluding that the State appropriately rebutted the presumption of harm. 
Appellant’s first issue is overruled.
 
Indictment
            In his second issue, Appellant argues that the trial court erred when it “introduced [the]
indictment using the term ‘unknown object’ to describe [the] alleged ‘deadly weapon.’” We
interpret Appellant’s second issue broadly to urge that the indictment was not sufficiently definite
with regard to its allegation concerning the deadly weapon used. A defendant is entitled to notice
if the State intends to seek a deadly weapon finding at trial, and the State’s failure to give such notice
constitutes reversible error. See Mixon v. State, 781 S.W.2d 345, 346 (Tex. App.–Houston [14th
Dist.] 1989), aff’d, 804 S.W.2d 107 (Tex. Crim. App. 1991). In Mixon, the court held that where
the indictment specifically alleged that the appellant “used and exhibited a deadly weapon” to
strangle the complainant and “did cause the death of the complainant” by strangling her, such
allegations gave the appellant sufficient notice that use of a deadly weapon would be a fact question
in his prosecution. Id. The court further held that a deadly weapon finding was not precluded
simply by the fact that the weapon is not specifically known. Id. 
            In the case at hand, the indictment alleged that Appellant “intentionally, knowingly or
recklessly cause[d] bodily injury to [the victim] by hitting her in the head with an unknown object”
and further that Appellant “did then and there use or exhibit a deadly weapon, to-wit: said unknown
object during the commission of said assault.” We hold that the indictment in the instant case gave
sufficient notice that the State intended to seek a deadly weapon finding at trial.
Ineffective Assistance of Counsel
            Appellant further argues that his trial counsel was ineffective in that he did not attempt to
quash the indictment on these grounds. Yet even assuming arguendo that the indictment did not
provide sufficient notice, Appellant cannot overcome the presumption that his trial counsel provided
reasonably effective assistance because the record does not contain evidence as to why his counsel
did not seek to quash the indictment. See, e.g., Matthews v. State, Nos. 12-03-00435–440-CR, 2004
WL 2721718, at *6 (Tex. App.–Tyler November 30, 2004, no pet. h.) (the appellant failed to meet
the first prong of Strickland


 because the record did not contain evidence concerning the appellant's
trial counsel's reasons for choosing the course he did). Appellant’s second issue is overruled.
 
Evidentiary Sufficiency
            In his third and fourth issues, Appellant argues that the evidence was neither legally nor
factually sufficient to support his conviction.
Legal Sufficiency
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.–San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).
            The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that “accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of
liability, and adequately describes the particular offense for which the defendant is tried.” Id. 
            A person commits the offense of aggravated assault if he (1) intentionally, knowingly, or
recklessly causes bodily injury to another and (2) uses or exhibits a deadly weapon while engaging
in such conduct. See Tex. Pen. Code Ann. §§ 22.02(a)(2), 22.01(a)(1) (Vernon Supp. 2004–05). 
A “deadly weapon” includes anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury. See Tex. Pen. Code Ann. § 1.07(a)(17)(B) (Vernon Supp.
2004–05). In an aggravated assault case, even absent a description of the weapon used, the deadly
character of the weapon used may be shown by the character of the wound inflicted. See Cloudy v.
State, 142 Tex. Crim. 211, 212, 152 S.W.2d 363 (1941); Mixon, 781 S.W.2d at 347 (the fact that
the specific type of object, which a medical examiner testified was used to put pressure on the neck
resulting in victim’s death, was unknown, did not preclude a finding that such an object was a deadly
weapon).
            In the case at hand, the victim, Eunice Gullick, testified that she lived with Appellant for
three years. At some point in time after the relationship between Gullick and Appellant had ended,
Appellant met Gullick in South Carolina, seeking to reconcile with her. Gullick informed Appellant
that she did not want to reconcile, and Appellant offered to drive Gullick to Texas. 
            Gullick testified that on January 19, 2003, she and Appellant arrived in Livingston, Texas. 
After meeting with Appellant’s friend, Lance Carr, and some other people, Appellant and Gullick
went to Carr’s mother’s house where they were to spend the night. Gullick testified that after
arriving at Carr’s mother’s house, she and Appellant began arguing. At some point, according to
Gullick, the argument escalated, and Appellant began cursing at her. Gullick testified that Appellant
then stood over her and began hitting her on her head, her stomach, and wherever else he could. To
protect herself, Gullick took out a pocket knife and cut Appellant’s neck. 
            Carr told Gullick and Appellant to leave. Gullick stated that when the two walked outside,
Appellant again attempted to hit her. When Carr threatened to call the police, Appellant and Gullick
agreed to leave in the car together. Gullick testified that once the two left Carr’s mother’s house,
Appellant began hitting her again, cursing at her, threatening her, and knocking her head against the
car window. Gullick further stated that Appellant continuously demanded that she give him the
knife, but that she told him she had dropped the knife while still at Carr’s mother’s house. Appellant
stated, according to Gullick, that when he found the knife he was going to kill her with it.
            Gullick testified that Appellant stopped the car and, with Gullick pinned between the car’s
front bucket seats, positioned himself on top of Gullick and began beating her again. Gullick stated
that, at some point, Appellant grabbed a hammer and told her that he would beat her brains out with
it. Gullick further stated that Appellant began hitting her on her head, chest, and stomach with some
object. Although she was not certain what the object was, Gullick testified that it had a hard texture
and was not Appellant’s fist. Gullick speculated that it was the handle of the hammer and stated that
she had been hit with Appellant’s fist enough to know the difference. Gullick stated that while
Appellant beat her, he told her that he was going to kill her. Thereafter, a police officer arrived and
the beating ceased. Gullick was later admitted to the hospital where she stayed for approximately
three to four days.
            Kathryn Ann Cundieff, a paramedic with EMS, testified that on January 19, 2003, she was
dispatched to a roadside park on Highway 19, south of Crockett, Texas. Once at the scene, Cundieff 
provided emergency medical services to Gullick. Cundieff stated that they immobilized Gullick’s
spine as she was complaining of pain in her neck. Cundieff testified that Gullick had suffered
hematomas, which are bruising and swelling, on her face and chest.
            Dr. Gary Candelaria treated Gullick upon her arrival at the hospital in Crockett, Texas. Dr.
Candelaria noted that Gullick had evidence of contusions to various places throughout her face, as
well as some abrasions. Dr. Candelaria further testified that upon examination, Gullick had
significant tenderness and pain in her left anterior chest wall in the lateral part of her chest wall as
well. Dr. Candelaria stated that a contusion is usually a blunt force injury that can cause
subcutaneous swelling and bleeding and that such injuries could be caused by blunt force objects. 
Dr. Candelaria further stated that the wooden end of a hammer could cause blunt force injuries such
as he observed in Gullick’s case. Dr. Candelaria testified that it was doubtful to him that Gullick
suffered her injuries as a result of a fall, but rather, that it was more likely that she was struck with
something. Dr. Candelaria further stated that it was not necessary that there be a fracture for a blunt
force injury to be present.
            From our review of the record, considering it in the light most favorable to the jury’s verdict,
we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant
intentionally, knowingly, or recklessly caused bodily injury to Gullick by hitting her in the head with
an unknown object and that Appellant further either used or exhibited a deadly weapon during his
commission of the assault. Therefore, we hold that the evidence is legally sufficient to support the
jury’s verdict. 
Factual Sufficiency
            In conducting a factual sufficiency review, we must first assume that the evidence is legally
sufficient under the Jackson standard. See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App.
1996). We then consider all of the evidence weighed by the jury that tends to prove the existence
of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Although we are authorized to
disagree with the jury’s determination, even if probative evidence exists that supports the verdict, 
see Clewis, 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony. Santellan, 939 S.W.2d at 164. 
Where there is conflicting evidence, the jury’s verdict on such matters is generally regarded as
conclusive. See Van Zandt v. State, 932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).
Ultimately, we must ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence
in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly
outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).


 
            A verdict will be set aside “only if the evidence supporting guilt is so obviously weak, or the
contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see 
Sims v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003). A clearly wrong and manifestly unjust
verdict occurs where the jury's finding “shocks the conscience,” or “clearly demonstrates bias.” 
Zuniga, 144 S.W.3d at 481.
            As the court of criminal appeals explained in Zuniga, "There is only one question to be
answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in its finding of guilt beyond a reasonable doubt?” See id. at 484.
            Here, there is, as Appellant notes in his brief, conflicting testimony concerning whether
Appellant struck Gullick with some sort of object. Indeed, although Appellant admitted on the
record to hitting Gullick multiple times with his hand, he denied striking her with anything else. 
Specifically, Appellant stated, “I don’t need anything to whoop that little woman.” Moreover, as
Appellant notes, there is evidence that Gullick was intoxicated on the night in question.
            We iterate that our evaluation should not substantially intrude upon the jury’s role as the sole
judge of the weight and credibility of witness testimony, see Santellan, 939 S.W.2d at 164, and
where there is conflicting evidence, the jury’s verdict on such matters is generally regarded as
conclusive. See Van Zandt, 932 S.W.2d at 96. It follows that the jury was entitled to believe
Gullick’s testimony that Appellant was hitting her with something other than his fist, and that she
had been hit enough times by his fist to know the difference, and Dr. Candelaria’s testimony that
the wooden end of a hammer could cause blunt force injuries such as he observed in Gullick’s case. 
See, e.g., Thompson v. State, 54 S.W.3d 88, 97 (Tex. App.–Tyler 2001, pet. ref’d). Moreover, the
jury was entitled to disbelieve Appellant’s testimony that he did not beat Gullick with anything other
than his fists. Id.
            Our review of the record as a whole, with consideration given to all of the evidence, both for
and against the trial court’s finding, has not revealed to us any evidence that causes us to conclude
that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by contrary proof
as to render Appellant’s conviction clearly wrong or manifestly unjust. We conclude that the jury
was rationally justified in finding Appellant guilty beyond a reasonable doubt. Therefore, we hold
that the evidence is factually sufficient to support the trial court’s verdict. 
Due Process Violation
            As part of his third issue, Appellant argues that the failure to test the hammer for his
fingerprints and DNA was a violation of his due process rights in that it permitted the prosecution
to mislead the jury. While Appellant claims that he moved for such testing in a February 13, 2004
pretrial hearing, there is no record of that hearing before us on appeal. Furthermore, the clerk’s
record contains no such motion. As such, Appellant has presented for us nothing to review. See
Tex. R. App. P. 33.1(a).



Ineffective Assistance of Counsel
            Appellant again argues that he received ineffective assistance of counsel. Specifically,
Appellant argues that his counsel was ineffective in his failure to object to the admission of the
hammer into evidence on the grounds that it had not been tested for fingerprints, fibers, blood, or
DNA. Appellant also complains that his counsel was ineffective for his failure to object to certain
photographs, which Appellant contends were offered by the State to inflame the minds of the jurors. 
For the reasons cited in our discussion of Appellant’s issue two, we hold that Appellant failed to
meet the first prong of Strickland because the record does not contain evidence concerning his trial
counsel's reasons for choosing the course he did. See, e.g., Matthews, 2004 WL 2721718, at *6. 
Appellant’s third and fourth issues are overruled.
 
Fatal Variance
            In his fifth issue, Appellant argues that there was a fatal variance between the allegations in
the indictment and the proof offered at trial. Specifically, Appellant contends that the indictment
alleged that he committed the offense using an “unknown object,” but that the evidence presented
at trial was that Appellant struck Gullick with a wooden-handled hammer. We disagree.
            A "variance" occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial. Gollihar v. State, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). In
a variance situation, the State has proven the defendant guilty of a crime, but has proven its
commission in a manner that varies from the allegations in the charging instrument. Id. A variance
claim is to be treated as an insufficiency of the evidence problem. See id. at 247. A variance that
is not prejudicial to a defendant's “substantial rights” is immaterial. Id. at 248. In determining
whether a defendant's substantial rights have been prejudiced in this context, two questions are
generally asked: (1) whether the indictment, as written, informed the defendant of the charge against
him sufficiently to allow him to prepare an adequate defense at trial and (2) whether prosecution
under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted
later for the same crime. Id.
            Here, we need not address the question as to materiality because the evidence does not reflect
that there existed any discrepancy between the allegations in the charging instrument and the proof
at trial. The indictment charged that Appellant caused bodily injury to Gullick “by hitting her in the
head with an unknown object.” 
            At trial, Gullick testified that Appellant grabbed a hammer and told her that he would beat
her brains out with it. Gullick further testified that Appellant began hitting her on her head, chest,
and stomach with some object. Although she was not certain what the object was, Gullick testified
that it had a hard texture and was not Appellant’s fist. Gullick speculated that it was the handle of
the hammer and stated that she had been hit with Appellant’s fist enough to know the difference. 
From our review of the record, we conclude that the evidence reflects that Appellant beat Gullick
with an unknown object. The record does not reflect definitively with what specific object Appellant
beat Gullick. As such, we hold that there was no variance between the allegations in the indictment
and the proof offered at trial. Appellant’s fifth issue is overruled. 
 
Ineffective Assistance of Counsel
            In his sixth issue, Appellant argues that he was denied ineffective assistance of counsel. 
Specifically, Appellant contends that his trial counsel’s failure to properly object to plain errors and
failure to adequately communicate with Appellant concerning his case demonstrates either a lack of
interest in Appellant’s case or a lack of professional knowledge in criminal defense. Appellant
further argues that his replacement counsel refused to consider his prior counsel’s deficiencies for
purposes of appeal. For the reasons cited in our discussion of Appellant’s issues two, three, and four,
we hold that Appellant failed to meet the first prong of Strickland because the record does not
contain evidence concerning why his counsel, either trial or appellate, chose their respective courses. 
See, e.g., Matthews, 2004 WL 2721718, at *6. Appellant’s sixth issue is overruled. 
 
Witness Credibility
            In his seventh issue, Appellant urges us to consider whether “the statements and testimonies
of the alleged victim to be considered as the gospel as in truthfulness.” Appellant argues that
Gullick’s testimony should have been impeached. We interpret Appellant’s seventh issue as
reurging the questions of factual sufficiency of the evidence and ineffective assistance of counsel. 
We have previously overruled Appellant’s third and fourth issues, determining that the evidence was
factually sufficient to support the jury’s verdict. Furthermore, for the reasons cited in our discussion
of Appellant’s issues two, three, and four, we hold that Appellant failed to meet the first prong of
Strickland because the record does not contain evidence concerning his trial counsel’s reasons for
choosing the respective courses he did. See, e.g., id. Appellant’s seventh issue is overruled.
 
Disposition
            Having overruled Appellant’s issues one, two, three, four, five, six, and seven, we affirm the
trial court’s judgment.
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
Opinion delivered January 12, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

(DO NOT PUBLISH)