COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-330-CR

 

YONAS TELDE ABRAHA                                                       APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant Yonas Telde Abraha
appeals his conviction and life sentence for murder.  In eighteen points, appellant complains that
the prosecutor improperly commented on his failure to testify, that his right
to remain silent was violated when his trial counsel called him to testify at
punishment, that the trial court erred by admitting evidence obtained from a
search of his home and car, and that he was denied effective assistance of
counsel during the guilt-innocence and punishment phases at trial. We affirm.  

II.  Background Facts

On May 10, 1999, Janice
Perkins was found dead in her locked apartment. 
Appellant and Perkins were in a relationship for two to three years, but
at the time Perkins was killed, they were no longer together.[2]  DNA evidence taken from underneath Perkins= fingernails established that appellant could not be excluded as the
possible donor and that 99.99% of the population had been excluded.








The Fort Worth Police
Department obtained an arrest warrant for appellant, arrested him, and a grand
jury indicted him for murder.  Appellant
was later released on bond, but he was expected to appear at his court
hearings.  However, on May 30, 2001, an
arrest warrant was issued for appellant after he failed to appear for court on
May 24, 2001.[3]  On September 19, 2003, the police arrested
appellant at Newark International Airport[4]
in Newark, New Jersey under the May 30, 2001 arrest warrant and extradited him
back to Texas where he stood trial.  On
July 16, 2004, a jury found appellant guilty of murder and on July 19, assessed
his punishment at a life sentence in the Institutional Division of the Texas
Department of Criminal Justice. 

III.  Points Presented

In appellant=s points one through five, he generally complains that during closing
argument at the guilt-innocence phase, the prosecutor improperly commented on
his failure to testify and that his attorney failed to object to the
comment.  In points six through ten,
appellant asserts that he was denied effective assistance of counsel and his right
to remain silent when he was called to testify during the punishment phase and
was forced to state that he did not wish to testify in front of the jury.  In points eleven through sixteen, appellant
contends that the trial court erred when it admitted evidence obtained through
searches of his car and home in violation of the Vienna Convention and that he
was denied effective assistance of counsel when his attorney failed to object
to the admission of the evidence.  In
appellant=s points
seventeen and eighteen, he complains that he was denied effective assistance of
counsel due to the cumulative effect of his attorney=s errors during trial. 

IV. Prosecutor=s Comment

A.  Failure to Testify








In points one through three,
appellant generally complains that the prosecutor improperly commented on his
failure to testify in violation of the United States and Texas Constitutions
and the code of criminal procedure.  See
U.S. Const. amend. V; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 2005).  

During closing argument at
guilt-innocence, the prosecutor stated,

You know, I
don=t know specifically how he did it. 
I mean, I think the medical examiner even told you he doesn=t know.  You know, maybe he had
her in a head lock and she=s panicking and clawing like this and causes some scratches, and in
the process she pulls out some of her own hair or hair extensions, I don=t know.  But somehow or other he
did it, only he knows.  He knows what
he did. [Emphasis added.] 

However, appellant failed to object to the comment at
trial.  A complaint regarding an improper
comment on the defendant=s failure to testify is forfeited if not
raised in the trial court.  See
Threadgill v. State, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); Wead v.
State, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004).  We conclude that appellant has failed to
preserve error for our review because he did not object to the prosecutor=s comment at
trial.  Thus, we overrule appellant=s points one
through three.

B.  Ineffective
Assistance of Counsel








In points four and five, appellant argues that he was
denied effective assistance of counsel in violation of the United States and
Texas Constitutions because his attorney failed to object to the State=s comment during
closing argument on his failure to testify. 

1. Standard of Review

To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005). 








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case. Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether
counsel's assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  A reviewing court will
rarely be in a position on direct appeal to fairly evaluate the merits of an
ineffective assistance claim.  Thompson,
9 S.W.3d at 813-14.  AIn the majority of cases, the record on direct appeal is undeveloped
and cannot adequately reflect the motives behind trial counsel=s actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.@  Salinas, 163 S.W.3d at 740 (quoting Thompson,
9 S.W.3d at 813).

B.  Analysis

Appellant complains that his attorney=s failure to
object to the prosecutor=s comment above constitutes ineffective
assistance of counsel.  We apply a strong
presumption that trial counsel was competent. 
See Thompson, 9 S.W.3d at 813. 
On appeal, we presume counsel's actions and decisions were reasonably
professional and motivated by sound trial strategy.  See Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994).  Here, we are
unable to determine from the record if appellant=s counsel=s failure to
object to the prosecutor=s comment was the result of trial
strategy.  Therefore, we overrule
appellant=s points four and five.

V. Right to Remain Silent








In appellant=s points six
through ten, he generally contends that he was denied effective assistance of
counsel and his right to remain silent under the United States and Texas
Constitutions and the code of criminal procedure  when his attorney called him to the stand to
testify during the punishment phase when he did not wish to. See U.S. Const. amend. V; Tex. Const. art. I, ' 10; Tex. Code Crim. Proc. Ann. art. 38.08. 

A.  Applicable Law

The Fifth Amendment of the United States Constitution
provides that no person Ashall be compelled in any criminal case to
be a witness against himself.@  U.S.
Const amend. V.  Article one,
section ten of the Texas Constitution states that a defendant, Ashall not be
compelled to give evidence against himself.@  Tex.
Const. art. I, ' 10. 
Article 38.08 of the code of criminal procedure directs that a defendant
may testify on his own behalf, but if he chooses not to, that fact shall not be
Aalluded to or
commented on by counsel in the case.@  Tex.
Code Crim. Proc. Ann. art. 38.08.   


B.  Applicable Facts

During the guilt-innocence phase, outside the presence of
the jury, appellant=s attorney explained to appellant that he
would recommend that appellant not testify. 
Appellant=s attorney then asked appellant if he
wanted to testify, and appellant stated that he did not wish to testify.








During the punishment phase, appellant=s attorney called
appellant=s sister, Birikiti Abraha, to
testify.  Before Birikiti could answer a
question asked by the prosecutor during cross-examination, appellant
interrupted and began telling the jury that he was not allowed to testify during
the trial.

[APPELLANT]:  I=d like the jury to know that I told this man right here
[his attorney] that I wanted to testify and they threatened me not to testify
in this case right now.  I=d like you to let the jury know
that right now.  Nobody allowed me to
talk.

 

[BIRIKITI]:
Yonas, sit down.

 

[APPELLANT]:  I asked him to testify in this case and he
didn=t allow me to do that.  And I asked Detective Carroll for a lie
detector test and Detective Carroll didn=t allow me to take a lie detector test for this case here.

 

[BIRIKITI]: Yonas.

[APPELLANT]: Detective Carroll himself
said that B 

[BIRIKITI]: Yonas.

[APPELLANT]:
B he was investigating somebody from
this house and they did not come and try to investigate that person.  Detective Carroll himself said that and that
person left town B 

 

THE COURT: Jury will go to the jury room.

[APPELLANT]: I=d like the jury to
know that.








After the jury left the courtroom, the trial judge stated, AMr. Abraha, it is
your right to be present in the court during your trial.  But you have to follow certain rules.  And if you cannot follow those rules, then I
will remove you from the courtroom. 
There are to be no other outbursts.@  The trial judge then asked appellant if he
was going to remain silent, and appellant said, AThey didn=t allow me to
testify and let me say anything that=s gone on in this
case.@  The trial judge again asked appellant if he
was going to remain silent during the testimony, and appellant said that he
would.

However, after Birikiti finished testifying, appellant=s attorney called
appellant to the stand to testify in front of the jury.  While appellant was still in his chair at
counsel table, the trial judge asked appellant, AMr. Abraha, do you
wish to testify?@ 
Appellant stated, AIn the first part of the case, sir.@ Appellant=s attorney then
said, ANo, judge.  I apologize. 
I was out of order.  I call Tekle
Hagos [appellant=s father].@

After Hagos testified and outside the presence of the jury,
appellant=s attorney again asked appellant questions
regarding his right to testify.

[DEFENSE
COUNSEL]:  Of course, you understand we=ve gone through the first phase of
trial and you had the right to testify at that phase of trial.  You made your decision.  Now, you and I have discussed in great detail
your right to testify in this phase of the trial.  Of course, I=ve told you the good and the bad
thing about testifying.  And back there a
few minutes ago you told me you do not want to testify in this phase of the
trial.  Is that still your position?

 

[APPELLANT]:
It serves no purpose to testify at this part of the trial.

 

[DEFENSE
COUNSEL]: So you don=t want to testify?








[APPELLANT]:
I wanted to testify in the first part of the trial.

 

[DEFENSE
COUNSEL]: That=s what you=re telling the Court now?

 

C. Analysis













Appellant complains that his right to remain silent under
the United States Constitution, Texas Constitution, and section 38.08 of the
code of criminal procedure was violated when he was called to testify by his
own counsel.  Every criminal defendant is privileged to testify in his own defense,
or to refuse to do so.  Salinas,
163 S.W.3d at 741; see Harris v. New York, 401 U.S. 222, 225, 91 S. Ct.
643, 645 (1971); see also Maddox v. State, 613 S.W.2d 275, 280 (Tex.
Crim. App. 1980) (recognizing that attorney has duty to protect client's right
to testify).  The Supreme Court has held
that this right arises from the Fifth and Sixth Amendments, that it is personal
to defendants, and that it cannot be waived by counsel.  Johnson v. State, 120 S.W.3d 10, 15
(Tex. App._Amarillo 2003), aff=d, 169 S.W.3d 223 (Tex. Crim. App. 2005),
cert. denied, 126 S. Ct. 1355 (2006); accord Rock v. Arkansas, 483
U.S. 44, 49-52, 107 S. Ct. 2704, 2707-09 (1987).  Here, appellant interrupted during Birikiti=s cross-examination and stated in the presence of the jury that he
wanted to testify.  Therefore, his
attorney had a duty to call him to the stand and allow him to testify on his
own behalf.  See Maddox, 613
S.W.2d at 280 (stating that an attorney has a duty to protect his client=s right to testify).  It was only
after appellant=s attorney
called him to testify that appellant informed the trial court and his counsel
that he did not want to testify during the punishment phase, but had wanted to
testify only during guilt-innocence.  We
hold that because appellant indicated that he wanted to testify and his
attorney had a duty to allow him an opportunity to testify, his right to remain
silent under the federal and state constitutions and the code of criminal
procedure was not violated.  Therefore,
we overrule appellant=s points
eight through ten.         In a case considering the issue of
ineffective assistance of counsel, we must presume counsel=s actions and decisions
were reasonably professional and were motivated by sound trial strategy.[5]
 See Jackson, 877 S.W.2d at 771; Matthews
v. State, 152 S.W.3d 723, 732 (Tex. App._Tyler 2004, no pet.).  Appellant has the burden of rebutting this
presumption by presenting evidence illustrating why his trial counsel did what
he did.  Matthews, 152 S.W.3d at
732.  Here, the record is silent as to
the reasons why appellant=s attorney called him to testify.  The last thing the jury heard before going to
the jury room was that appellant wanted to testify, but his attorney would not
allow him to.  It would not seem
illogical that appellant=s attorney would call him to the stand to
ease the confusion of the jurors about whether appellant wished to
testify.  As a result, appellant cannot
overcome the strong presumption that his counsel performed effectively.  See Matthews, 152 S.W.3d at 732.  We overrule points six and seven.   

VI.  Admission of
Evidence

In points eleven through sixteen, appellant generally
complains that the trial court erred in admitting DNA evidence and evidence
obtained from searches of his car and house and that he was denied effective
assistance of counsel when his attorney failed to object to the admission of
the evidence in violation of his rights under the Sixth Amendment, Vienna
Convention on Consular Relations, and article 1, section 10 of the Texas
Constitution. 

A.  Applicable Law

Article VI of the United States Constitution provides,

This
Constitution, and the laws of the United States which shall be made in
Pursuance thereof; and all Treaties made, or which shall be made, under the
Authority of the United States, shall be the supreme Law of the Land; and the
Judges in every State shall be bound thereby, any Thing in the Constitution or
Laws of any State to the Contrary notwithstanding.

 








U.S. Const. art. VI. 
Article 38.23 of the code of criminal procedure governs what type of
evidence cannot be used at trial.  Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005).  The article provides,

(a)
No evidence obtained by an officer or other person in violation of any
provision of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case.  

 

Id. ' 38.23(a). 


B.  Applicable Facts

On May 19, 1999, Aliece Watts, a senior forensic scientist
in the serology DNA department with the Fort Worth Police Department crime
laboratory, collected DNA samples from appellant pursuant to a search warrant.
Watts collected one tube of blood, saliva samples, and head and pubic hair
samples.  At the trial, the State
introduced a container that had part of a swab, a stain from the blood sample,
and an envelope that contained another blood swatch into evidence.  Appellant objected to the introduction of the
evidence on the basis of relevance and rules 401, 402, and 403.  See Tex.
R. Evid. 401, 402, 403.  The trial
court overruled each of appellant=s objections and
allowed the samples into evidence.








Also at trial, Mike Carroll, a homicide detective with the
Fort Worth Police Department, testified that he obtained a search warrant for
appellant=s white Chevrolet Camaro.  During the search of the car, the police found
a picture of Perkins in the back passenger seat.  The State introduced the picture into
evidence without objection. 
Additionally, Detective Carroll testified that he obtained a search
warrant for appellant=s duplex. 
The police recovered a Ahandful@ of hair from the
bathroom, the trash can in the kitchen, and other places where the hair was
scattered throughout the apartment. 
Appellant did not object to the testimony of what was found in his
house. 

C.  Analysis








The Vienna Convention on
Consular Relations is a treaty which protects the rights of United States
citizens abroad and foreign nationals in the United States.  Vienna Convention on Consular Relations, Apr.
24, 1963, art. 36, at
http://www.sos.state.tx.us/border/intlprotocol/vienna.shtml; Sorto v. State,
173 S.W.3d 469, 477 (Tex. Crim. App. 2005), petition for cert. filed,
____  U.S.L.W. _____ (Jan. 2,
2006) (No. 05-8520).  The treaty promotes
the effective delivery of consular services in foreign countries, including
access to consular assistance when a citizen of one country is arrested,
committed to prison or in custody pending trial, or detained in any other manner
in another country.  Sorto, 173
S.W.3d at 477. In its preamble, the treaty states that Athe purpose of such privileges and immunities is not to benefit
individuals but to ensure the efficient performance of functions by consular
posts on behalf of their respective States[.]@ Id. (citing Vienna Convention on Consular Relations,
preamble).  

Article 38.23 provides that
any evidence that is obtained in violation of the federal and State
constitutions must be excluded from trial.  Tex.
Code Crim. Proc. Ann. art. 38.23(a). 
However, the court of criminal appeals has held that the Vienna
Convention is excluded from article 38.23 of the code of criminal procedure.  See Rocha v. State, 16 S.W.3d 1, 19 (Tex.
Crim. App. 2000).  The court stated, AGiven the language of article 38.23, the purpose and function that treatises
provide, and the uniquely federal aspect involved in enforcing international
agreements, we hold that treatises do not constitute >laws= for article
38.23 purposes.@  Id. 
More recently, in Sorto, the court of criminal appeals held, A[T]he Vienna Convention does not create the type of personal rights
the violation of which can be remedied in Texas criminal courts by the
suppression of evidence under article 38.23.@  Sorto, 173 S.W.3d at
479.  








Therefore, until the Supreme
Court decides that Vienna Convention violations must be enforced through the exclusionary
rule by all federal and state courts, article 38.23 does not apply to the
treaty.  See Rocha, 16 S.W.3d at
19.  Appellant does not challenge the
admission of the evidence on any other basis. 
Because the court of criminal appeals has held that the Vienna
Convention is excluded from article 38.23, we hold that the trial court did not
err in admitting the DNA evidence or the evidence obtained from the searches of
appellant=s car and
house.  Thus, we overrule points eleven
and fourteen.  

D.  Ineffective Assistance of Counsel

In appellant=s points twelve and thirteen, he complains that he was denied
effective assistance of counsel because his attorney failed to object to the
admission of DNA evidence.  In points
fifteen and sixteen, appellant asserts that he was denied effective assistance
of counsel because his attorney failed to object to the admission of items
recovered from searches of his car and house in violation of the federal
constitution and the Vienna Convention. 
However, as we stated above, the trial court did not abuse its
discretion in admitting the DNA evidence or the evidence from the search of
appellant=s car and
house because the Vienna Convention is excluded from article 38.23.  The failure to object does not establish
ineffective assistance of counsel if no proper objection could have been made.  See Hernandez v. State, 799 S.W.2d
507, 509 (Tex. App.CCorpus
Christi 1990, pet. ref=d).  Therefore, we overrule appellant=s points twelve, thirteen, fifteen, and sixteen.

VII.  Cumulative Effect of Errors








In points seventeen and
eighteen, appellant complains that he was denied effective assistance of
counsel because of the cumulative effect of his attorney=s errors during the guilt-innocence and punishment phases at trial.
Appellant asserts that the above errors taken together fall below the objective
standard of reasonableness under prevailing professional norms.  However, as discussed above, appellant=s attorney did not err in (1) failing to object to the prosecutor=s comment, (2) calling appellant to the witness stand to testify, and
(3) not challenging the admissibility of the evidence found in appellant=s car and house allegedly obtained in violation of the Vienna
Convention.  We conclude that appellant
was not denied effective assistance of counsel because his attorney did not err
during the trial. Therefore, we overrule appellant=s points seventeen and eighteen. 


VII.  Conclusion

Having overruled appellant=s eighteen points, we affirm the trial court=s judgment.  

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE, C.J.; LIVINGSTON and HOLMAN, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 30, 2006             











[1]See Tex. R. App. P. 47.4.





[2]Perkins=
mother denied that Perkins was dating someone else, but Tamika Austin, Perkins=
cousin, testified that she was dating Kerry Washington at the time she was
murdered. 





[3]Appellant
fled the country before his trial began.





[4]Appellant
was on a flight from Switzerland to New Jersey.





[5]Ineffective
assistance claims are usually best addressed by a post-conviction writ of
habeas corpus.  See Thompson, 9
S.W.3d at 814 & n.6; Ex parte Torres, 943 S.W.2d 469, 475-76 (Tex.
Crim. App. 1997).