James Michael MATTHEWS,
Appellant,

v.

The STATE of Texas, Appellee.

Nos. 12–03–00435–CR to
12–03–00441–CR.

Court of Appeals of Texas,
Tyler.

Nov. 30, 2004.

J. Douglas Froneberger, Sulphur Springs, for appellant.

Martin E. Braddy, for appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J. and DeVASTO, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

James Michael Matthews appeals his convictions for one count of aggravated sexual assault of a child [1] and ten counts of indecency with a child.[2] Appellant raises four issues on appeal. We affirm.

### BACKGROUND

Appellant was charged by multiple indictments with eleven [3] counts of indecency with a child and one count of aggravated sexual assault of a child. The indecency charges stemmed from allegations from Appellant's daughter, J.M., and his two

---

1. See TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(iv) (Vernon Supp.2004–05).

2. See TEX. PEN.CODE ANN. § 21.11(a) (Vernon 2003).

3. The State abandoned one count of indecency with a child prior to the case's submission to the jury.

nieces, E.W. and L.A.[4] The charge of aggravated sexual assault related to an incident alleged by E.W. Each of the complainants testified at trial.

### L.A.'s Testimony

L.A. testified concerning four incidents involving Appellant that began occurring sometime before her eighth birthday. L.A. testified that, on one occasion, she was at Appellant's house late one afternoon, and that she, Appellant, and her cousin, S.W., who is Appellant's son, were lying on her aunt's bed.[5] L.A. testified that she was lying between Appellant and S.W. According to L.A., while her cousin was asleep, Appellant touched and rubbed L.A.'s vagina underneath her clothes with his hand. L.A. testified that Appellant then made her touch and rub his penis with her hand.

On another occasion, when L.A. was visiting her grandparents' house, she, Appellant, and S.W. were walking in a nearby pasture next to a wooded area. L.A. testified that S.W. went off to play, and while he was away, Appellant sat on a fallen tree with L.A. on his lap. L.A. stated that as she sat on Appellant's lap, Appellant touched her vagina on top of her clothing and made her touch his penis on top of his clothing.

L.A. testified that in another instance, she and S.W. were sitting in the living room at her grandparents' house when Appellant entered the room. L.A. stated that she was lying on the sofa and that Appellant entered the room and sat next to her. L.A. testified that, as Appellant sat there, he touched her vagina with his hand on top of her clothes.

L.A. next testified that on yet another occasion, she was alone with Appellant in his house. According to L.A., Appellant laid on the floor and made her get on top of him and kiss him on the lips.

### E.W.'s Testimony

E.W. testified concerning four incidents involving Appellant that occurred when she was approximately nine or ten years old. E.W. testified that, on one occasion, while she was visiting her grandparents' house, she was in an uncle's bedroom alone with Appellant. According to E.W., Appellant pulled her shorts and underwear down to her ankles. She then walked into a nearby room. E.W. testified that Appellant followed her, picked her up, and put his mouth on her vagina.

E.W. further testified concerning another incident when she and Appellant were in the bathroom at Appellant's house. E.W. stated that Appellant pulled down his pants, took her hands, placed them on his erect penis, and made E.W. masturbate him.

E.W. testified that, on another occasion, when she was spending the night at Appellant's house and was sleeping in the bed with Appellant and his wife, she awoke to discover Appellant's fingers inside her vagina.

Finally, E.W. testified that on yet another occasion, she and Appellant were in the woods near her grandparents' house picking blackberries. E.W. stated that Appellant either removed or unbuttoned his shirt and, with E.W. on top of him, touched her breast.

---

4. Five of the indecency counts related to incidents alleged to have occurred with L.A. Three of the indecency counts related to incidents alleged to have occurred with J.M. Three of the indecency counts related to incidents alleged to have occurred with E.W.

5. The record reflects that Appellant's house comprised two separate structures. Appellant slept in one structure, while his wife slept in the bed in the other structure because Appellant suffered from back problems.

### J.M.'s Testimony

J.M. testified concerning an incident involving Appellant that occurred when she was eleven years old. According to J.M., on August 14, 2001, she was at home and had fallen asleep on the bed that she and her mother ordinarily shared. J.M. awoke when Appellant entered the room and sat on the bed beside her. J.M. stated, "He started touching me, but he was being more aggressive than he usually was." She then testified that Appellant laid down on the bed and touched her vagina and breast with his hand on top of her clothes. J.M. stated that Appellant touched her vagina for a few minutes and kissed her on her mouth and the top of her chest. J.M. further testified that Appellant touched her chest under her clothes, but on top of her undergarments.

J.M. recounted that prior to the aforementioned incident, she had attempted to commit suicide by swallowing a bottle of pills. At the time, her given reason for her suicide attempt was that she was depressed and her mother was not paying much attention to her. J.M. testified that she now realizes that she took the pills because she did not want to be alone with her father on an upcoming vacation because he would "touch" her sometimes. J.M. stated that she never said anything about it because it was easier to make up another excuse for her behavior. Following the incident on August 14, J.M. became depressed and anorexic. J.M. testified that she stopped eating because she thought Appellant molested her because there was something wrong with her body.

### Testimony of Appellant's Wife and Kathy Smedley[6]

Appellant's wife testified that while at work, she received a phone call from her daughter, J.M., in August 2001. Appellant's wife testified that J.M. was crying and told her that "she had come to lay down to take a nap on [her] bed and had the TV on, and [Appellant] had come over ... [and] touched her private parts and her breasts."

Kathy Smedley, the program director for the Northeast Texas Child Advocacy Center, interviewed J.M. after the matter was referred to the Advocacy Center by Child Protective Services.[7] Smedley testified that J.M. told her that Appellant touched her vagina. A videotape of the interview between Smedley and J.M. was introduced into evidence over Appellant's objection.

### Verdict and Sentence

Following the close of evidence and argument of counsel, the jury found Appellant guilty as charged on ten counts of indecency with a child and one count of aggravated sexual assault of a child. The jury further recommended punishment at imprisonment for ten years and a $2,000 fine for each count of indecency with a child and imprisonment for forty years and a $5,000 fine for the count of aggravated sexual assault of a child. The trial court sentenced Appellant accordingly. This appeal followed.

### OUTCRY WITNESSES

In his first issue, Appellant argues that the trial court erred in admitting the outcry testimony of both Appellant's wife and Kathy Smedley.[8] A trial court

6. Appellant's wife and Kathy Smedley each testified prior to the testimony of the three victims.

7. Appellant objected to Smedley's testimony contending that she was not a proper outcry witness pursuant to Texas Code of Criminal Procedure article 38.072.

8. At trial, in a hearing outside the jury's presence, Appellant objected to the State's proposition that there were two outcry witnesses,

has broad discretion in determining the admissibility of outcry witness testimony. *See Garcia v. State,* 792 S.W.2d 88, 92 (Tex.Crim.App.1990). The exercise of such discretion will not be disturbed unless a clear abuse of discretion is established by the record. *Id.* A trial court's findings will be upheld when they are supported by the evidence. *Id.*

### Multiple Outcry Witnesses

■ Outcry testimony is admissible in spite of the hearsay rule with respect to statements that describe the alleged offense where such statements (1) were made by the child against whom the offense was allegedly committed and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* Tex.Code Crim. Proc. Ann. art. 38.072 § 2(a), (b) (Vernon Supp. 2004–05). To "describe the alleged offense," the statute demands that the statement must be "more than words which give a general allusion that something in the area of child abuse was going on[,]" but rather, must describe the offense "in some discernible manner[.]" *Garcia,* 792 S.W.2d at 91.

■ Admissible outcry witness testimony is not person-specific, but event-specific. *See Broderick v. State,* 35 S.W.3d 67, 73 (Tex.App.-Texarkana 2000, pet. ref'd). However, before more than one outcry witness may testify, it must be determined that the outcry concerned different events, and not simply a repetition of the same event as related by the victim to different individuals. *Id.*

■ In the case at hand, the charges at issue relating to J.M. allege (1) that Appellant intentionally or knowingly engaged in sexual contact with J.M. by touching her

genitals and (2) that Appellant intentionally or knowingly engaged in sexual contact with J.M. by touching her breast. Appellant's wife testified that J.M. told her that Appellant had molested her by touching her "private parts" and her "breasts." Smedley subsequently testified that J.M. told her that Appellant touched her vagina. While the record reflects that Appellant's wife was the first person over eighteen to whom J.M. related the incident of Appellant touching her breasts, J.M.'s statement that Appellant touched her "private parts" does not describe any alleged offense in a discernable manner as required by the statute. The statement that Appellant touched J.M.'s "private parts" is no more than a general allusion that child abuse had occurred. Thus, Appellant's wife did not offer outcry testimony with respect to the allegations that Appellant touched J.M.'s genitals. As Smedley testified that J.M. told her that Appellant touched her vagina, she is the proper outcry witness for that incident. We hold that the trial court did not err in admitting the testimony of two outcry witnesses as their testimony related to different incidents.

### Videotaped Interview Containing Outcry Testimony

As part of his first issue, Appellant further argues that if Smedley's testimony was properly admitted, then the trial court erred in admitting the videotaped interview between Smedley and J.M. because the tape contained cumulative evidence. As with all rulings on the admissibility of evidence, we must evaluate the trial court's ruling under an abuse of discretion standard of review. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). An abuse of discretion occurs where a trial judge acts arbitrarily and unreasonably,

contending that Appellant's wife was the proper outcry witness for J.M.

without reference to guiding rules or principles of law. *See Briones v. State*, 12 S.W.3d 126, 128 (Tex.App.-Fort Worth 1999, no pet.). Thus, the trial court is given wide discretion in determining the admissibility of evidence. *Id.*

Texas courts have long recognized cumulativeness as a factor allowing the exclusion of probative evidence. *Id.* "Cumulative" implies that other relevant evidence has already been received. *Id.* A careful examination of Rule 403's wording suggests that where cumulative evidence is offered, exclusion is not mandatory, but only an alternative to be considered in promoting judicial efficiency. *Id.* (citing *Alvarado v. State*, 912 S.W.2d 199, 212 (Tex.Crim.App.1995)). Therefore, the significance of Appellant's objection depends on whether the videotape's probative value substantially outweighed its effect on the trial's efficiency. *Briones*, 12 S.W.3d at 126.

Appellant cites *Williams v. State*, No. 06-02-00090-CR, 2003 WL 22100789 (Tex. App.-Texarkana 2003, pet. ref'd) (not designated for publication) in support of his argument. However, Appellant's reliance on *Williams* is curious. In *Williams*, although the trial court concluded that the admission of a videotaped interview of an outcry witness was improper, it held that the admission of such testimony did not harm the appellant because such evidence was "cumulative of properly admitted testimony on the same issue." *Id.* at *3. Thus, even if we were to assume that the videotaped interview between Smedley and J.M. was admitted in error, such error did not harm Appellant because, as is the brunt of Appellant's argument, it was cumulative of other testimony on the same issue. *Id.*

Furthermore, even if, as Appellant contends, the videotaped interview was unnecessarily cumulative, the record does not reflect that Appellant was harmed as a result thereof. Error is harmless when evidence of the same acts is admitted later at trial without objection. *See Woolls v. State*, 665 S.W.2d 455, 470 (Tex.Crim.App. 1983). In the instant case, following Smedley's testimony and the introduction of the videotaped interview between Smedley and J.M., J.M. testified without objection that Appellant touched her vagina and her breast with his hand on top of her clothes. Such testimony corresponds closely with the testimony of Smedley and the videotaped interview between Smedley and J.M. Thus, we hold that even if the trial court abused its discretion in admitting the videotaped interview between Smedley and J.M., such error was harmless. Appellant's first issue is overruled.

## REFUSAL TO SEVER

In his second issue, Appellant argues that he was unfairly prejudiced by the trial court's refusal to sever the prosecution of the various charges against him. Specifically, Appellant argues that had the severance been granted, the jury in such separate trials would not have heard the testimony of multiple victims.

A defendant's right to sever two or more offenses that have been consolidated or joined for trial does not apply to a prosecution for indecency with a child or aggravated sexual assault of a victim under seventeen years of age unless the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses. *See* TEX. PEN.CODE ANN. § 3.04(c) (Vernon 2003). The standard of review for whether a trial court properly ruled on a motion to sever, when that determination is left to the trial court by statute, is abuse of discretion. *See Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.-Houston [14th Dist.] pet. ref'd). There is no presumption that the joinder

of cases involving aggravated sexual assault against different children is unfairly prejudicial. *Id.*

■■■■ Evidence of other crimes is not admissible to prove the character of a person to show he acted in conformity therewith, but such evidence may be admissible for other purposes. *See* Tex.R. Evid. 404(b). To be admissible, evidence must be relevant to some material issue in the case and not simply proof of character conformity. *Salazar,* 127 S.W.3d at 365 (citing *Moses v. State,* 105 S.W.3d 622, 626 (Tex.Crim.App.2003)). The ultimate test is whether the probative value of the evidence substantially outweighs its prejudicial effect. *Id.*

■■■■ Here, the underlying defensive theory in Appellant's case was that the allegations against him were concocted to extort the proceeds of an insurance check from him, or otherwise, as a result of lack of parental attention, anger, resentment, or general exposure to familial dysfunction. Evidence of other crimes may be admitted if it rebuts a defensive theory. *See Salazar,* 127 S.W.3d at 365 (citing *Moses,* 105 S.W.3d at 627). Thus, even had Appellant's cases been tried separately, it is probable that the testimony of the other victims would have been admissible to refute the defensive theory that the complainants, for whatever reason, concocted the story. *See Salazar,* 127 S.W.3d at 365; *Castoreno v. State,* 932 S.W.2d 597, 600 (Tex.App.-San Antonio 1996, pet. ref'd) (stating evidence of extraneous acts was admissible to rebut defensive theory that the defendant was being framed). We conclude that the trial court could have reasonably found that joinder of the cases was not unfairly prejudicial against Appellant. Therefore, we hold that the trial court did not abuse its discretion in trying the cases together. *See Salazar,* 127

S.W.3d at 366. Appellant's second issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Appellant contends that he received ineffective assistance of counsel. Specifically, Appellant argues that his trial counsel was ineffective in that he failed to submit the motion to sever to the trial court in a timely fashion. Appellant's third issue is conditioned on the assumption that our resolution of his second issue turned on the timeliness of his motion to sever. However, as set forth above, we have concluded that the trial court could have reasonably found that joinder of the cases was not unfairly prejudicial against Appellant and, therefore, did not abuse its discretion in trying the cases together. Yet, even if Appellant's third issue was not conditioned on an alternate underlying rationale for the resolution of his second issue, the outcome would not differ.

■■■ Claims of ineffective assistance of counsel are evaluated under the two-step analysis articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See id.,* 466 U.S. at 688, 104 S.Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim. App.1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation, but will judge the claim based on the totality of the representation. *See Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069.

To satisfy the *Strickland* standard, the appellant is also required to show prejudice from the deficient performance of his attorney. *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999). To establish prejudice, an appellant must prove that but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■■■■ In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Jackson v. State,* 973 S.W.2d 954, 955 (Tex. Crim.App.1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective assistance); *Phetvongkham v. State,* 841 S.W.2d 928, 932 (Tex.App.-Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim); *see also Beck v. State,* 976 S.W.2d 265, 266 (Tex. App.-Amarillo 1998, pet. ref'd) (inadequate record for ineffective assistance claim, citing numerous other cases with inadequate records to support ineffective assistance claim). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State,* 892 S.W.2d 112, 115 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

■■■■ In the case at hand, the record is silent as to the reasons underlying Appellant's counsel's timing with regard to his motion to sever. As a result, Appellant cannot overcome the strong presumption that his counsel performed effectively. Therefore, we hold that Appellant has not met the first prong of *Strickland* because the record does not contain evidence concerning Appellant's trial counsel's reasons for choosing the course he did. Thus, we cannot conclude that Appellant's trial counsel was ineffective. Appellant's third issue is overruled.

### FACTUAL SUFFICIENCY

In his fourth issue, Appellant argues that the evidence admitted during trial is insufficient to support a conviction for indecency with a child and aggravated sexual assault of a child. More specifically, Appellant argues that while the victims testified that he committed the crimes with which he was charged, other evidence points to possible ulterior motives, which cast doubt on the veracity of the victims' testimony. We interpret Appellant's fourth issue as urging that the evidence is factually insufficient to support the jury's verdict.

■■■■ In conducting a factual sufficiency review, we must first assume that the evidence is legally sufficient under the *Jackson* standard. *See Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We then consider all of the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it to the evidence that tends to disprove that fact. *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim. App.1997). Although we are authorized to disagree with the jury's determination, even if probative evidence exists that supports the verdict, *see Clewis,* 922 S.W.2d at 133, our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony. *Santellan,* 939 S.W.2d at 164. Where there is conflicting evidence,

the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex. App.El Paso 1996, pet. ref'd). Ultimately, we must ask whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000).[9]

A verdict will be set aside "only if the evidence supporting guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting evidence, as to render the conviction clearly wrong and manifestly unjust." *Ortiz v. State*, 93 S.W.3d 79, 87 (Tex.Crim.App. 2002); *see Sims v. State*, 99 S.W.3d 600, 601 (Tex.Crim.App.2003). A clearly wrong and manifestly unjust verdict occurs where the jury's finding "shocks the conscience," or "clearly demonstrates bias." *Zuniga*, 144 S.W.3d at 481.

As the court of criminal appeals explained in *Zuniga*, "There is only one question to be answered in a factual-sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in its finding of guilt beyond a reasonable doubt?" *See id.* at 484.

■ In the case at hand, the testimony of the three victims was compelling. Yet, Appellant urges in his brief that evidence that the victims each had issues such as anger, resentment, lack of parental attention, and general familial dysfunction casts reasonable doubt on the veracity of the respective victims' testimony.

We iterate that our evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony, *see Santellan*, 939 S.W.2d at 164, and that where there is conflicting evidence, the jury's verdict on such matters is generally regarded as conclusive. *See Van Zandt v. State*, 932 S.W.2d 88, 96 (Tex.App.El Paso 1996, pet. ref'd). Our review of the record as a whole, considered in a neutral light, does not cause us to conclude that the evidence supporting a finding of Appellant's guilt beyond a reasonable doubt is so greatly outweighed as to render the conviction clearly wrong and manifestly unjust. As such, we conclude that the jury was rationally justified in finding Appellant guilty beyond a reasonable doubt. Therefore, we hold that the evidence is factually sufficient to sustain the jury's verdict. Appellant's fourth issue is overruled.

### CONCLUSION

Having overruled Appellant's issues one, two, three, and four, we *affirm* the trial court's judgment.

---

9. However, "contrary evidence does not have to outweigh evidence of guilt; it has to be only enough to provide reasonable doubt." *Zuniga v. State*, 144 S.W.3d 477, 483 (Tex. Crim.App.2004).