COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                       NOS.  2-05-053-CR

        2-05-054-CR

        2-05-055-CR

 

KELLY DENISE JAMISON                                                      APPELLANT

A/K/A
KELLY D. JAMISON

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Kelly Denise
Jamison appeals from her two life sentences for two counts of possession of a
controlled substance and her twenty-year sentence for fraudulent use or
possession of identifying information. 
In a single point, Appellant argues that her trial counsel rendered
ineffective assistance at her punishment hearing after the trial court revoked
her deferred adjudication community supervision.  We affirm.

                             Factual and Procedural Background

In two separate cases, grand
juries indicted Appellant for possession of more than one gram but less than
four grams of methamphetamine, and both indictments contained habitual-offender
notices.  In a third case, a grand jury
indicted Appellant on five counts of possession or use of identifying
information with intent to defraud, and the indictment included an enhancement
paragraph. Pursuant to plea bargains in all three cases, Appellant pleaded
guilty to the charges and pleaded true to the habitual offender notices and the
enhancement paragraph, and the trial court placed her on deferred adjudication
community supervision for ten years in each case.








The State moved to proceed to
adjudication in all three cases, alleging that Appellant, within three months
of having been released from jail on community supervision, violated the
conditions of community supervision by using a controlled substance and failing
to report, to which Appellant pleaded true, and committing a new offense and
failing to submit an undiluted urine sample for drug testing, to which Appellant
pleaded not true.  The alleged new
offense was another instance of possession or misuse of identifying information
with intent to defraud.  The State
offered evidence that police apprehended Appellant while she was forging checks
and identification cards with a scanner, computer, printer, and laminating
machine in a motel room that she had rented using false identification.  The trial court found all of the alleged
community-supervision violations to be true except for the alleged failure to
submit an undiluted urine sample.

The trial court proceeded to
adjudication in all three cases, finding Appellant guilty of each charge and
finding the habitual-offender and enhancement allegations to be true.  The court offered each side the opportunity
to present punishment-phase evidence. 
Appellant offered no evidence. 
The trial court then sentenced Appellant to life imprisonment for each
of the possession charges and twenty years= imprisonment for the misuse-of-identification chargeBthe maximum sentence for each chargeCwith all of the sentences to run concurrently. 








Appellant=s counsel filed timely notices of appeal.  Appellant filed a pro se AMotion for Substitution of Attorneys@ in this court, which we granted. 
After Appellant=s new
counsel filed Appellant=s brief
asserting ineffective assistance of trial counsel, the State filed an unopposed
motion asking this court to abate the appeal and remand to the trial court so
that Appellant could file an out-of-time motion for new trial to develop her
ineffective-assistance claims.  We
granted the State=s motion and
remanded the cases to the trial court. 

Appellant then filed motions
for new trial in the trial court, and the trial court held an evidentiary
hearing on the motions.  Three witnesses
testified at the hearing.

First, Appellant=s one-time community supervision officer, Stacy Pickett, testified that
Appellant was rejected by the Nexus drug-rehabilitation program, which
Appellant was ordered to attend as a condition of community supervision,
because she was not a resident of Dallas County as required by that
program.  Efforts to place Appellant in
another program came to a halt when Appellant violated another term of her
community supervision by testing positive for illegal drugs. 








Appellant testified that
after her arrest for violating the terms of her community supervision and
before the trial court=s
adjudication of guilt, she applied to and was accepted by two other
drug-treatment programs, Homeward Bound and Cenikor.  She said that she told her trial counsel that
she had been accepted by those programs, but he did not contact anyone at
Homeward Bound or Cenikor regarding their willingness to testify on Appellant=s behalf at the punishment hearing. 
A Cenikor representative sent a letter to the trial court concerning
Appellant=s acceptance
into the program, but according to Appellant, counsel told her that it was not
necessary to call the author as a witness. 
Appellant testified that she obtained a letter from her employer stating
that the employer would hold her job while she was in rehabilitation and that
she gave the letter to counsel.  She said
that counsel gave the letter to the trial judge but did not call the employer
as a witness. 








Finally, Appellant=s trial counsel testified at the hearing.  He testified that he was aware of letters
sent to the trial judge by Cenikor and Homeward Bound regarding Appellant=s acceptance into their treatment programs, but he did not contact the
authors of the letters or call them as witnesses at the punishment
hearing.  Counsel stated that he also
received a letter from a chaplain addressed to the trial judge stating that
Appellant appeared sincere in her desire to obtain drug treatment and noting
positive changes in Appellant=s character.  Counsel did not
contact the chaplain.  Nor did counsel
contact Appellant=s prior employers
or call any prior employer as a witness. 
Counsel testified that he discussed Appellant=s cases with the trial judge before the adjudication and punishment
hearing, and that the trial judge offered sentences of twenty-five years for
each of the possession charges and twenty years for the fraudulent
identification charge.  Counsel stated
that after he received the three letters in question, he told Appellant that he
would discuss the letters with the judge to see if they would affect the judge=s offer.  He discussed the
letters with the judge, and they did not affect the offer.  Counsel testified that he did not call the
letters= authors as witnesses because in his experience the trial judge always
takes such letters into account just as though the authors had testified to the
matters stated in the letters.  Counsel
said that he told Appellant the judge had offered two twenty-five-year
sentences, but if she rejected the offer, he could sentence her to life
imprisonment. 

The trial court denied
Appellant=s motion for
new trial.  Appellant then filed a
supplemental brief in this court, reurging her argument that she was denied
effective assistance of counsel at the punishment phase of the revocation
hearing because trial counsel failed to investigate mitigating circumstances
and called no punishment-phase witnesses.[2]


                                             Discussion








To establish ineffective
assistance of counsel, appellant must show by a preponderance of the evidence
that her counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex.
Crim. App. 1999).








In evaluating the
effectiveness of counsel under the first prong, we look to the totality of the
representation and the particular circumstances of each case.  Thompson, 9 S.W.3d at 813.  The issue is whether counsel=s assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland, 466 U.S. at 688-89,
104 S. Ct. at 2065.  Review of counsel=s representation is highly deferential, and the reviewing court
indulges a strong presumption that counsel=s conduct fell within a wide range of reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.  We presume counsel=s actions and
decisions were reasonably professional and motivated by sound trial
strategy.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Matthews v. State, 152
S.W.3d 723, 732 (Tex. App._Tyler 2004, no
pet.).  Appellant has the burden of
rebutting this presumption by presenting evidence illustrating why her trial
counsel did what he did.  Matthews,
152 S.W.3d at 732.

The second prong of Strickland
requires a showing that counsel=s errors were so serious that they deprived the defendant of a fair
trial, i.e., a trial whose result is reliable. 
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is
a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

Appellant argues that counsel
was ineffective because he failed to reasonably investigate mitigating
circumstances and failed to call witnesses who could testify about Appellant=s employment potential and desire to rehabilitate.  We disagree.








We first consider the letters
from the treatment centers and counsel=s failure to call the letters= authors as witnesses.  The
Homeward Bound letter simply states that Appellant would be accepted into the
Homeward Bound program within seventy-two hours Aof release back into probation.@  The Cenikor letter states that
Appellant met Cenikor=s admission
criteria and was Aready to
relinquish her negative lifestyle.@  Both letters are addressed to
the trial court, and the Cenikor letter appears in one of the clerk=s records.  Counsel testified
that he discussed the letters with the trial judge before the hearing; thus, we
presume that the trial court was aware of the letters= contents.  Neither letter
reflects information significant to sentencing, and Appellant failed to show
that the letters= authors
would have testified to any additional facts that would be relevant to
sentencing.  Finally, counsel testified
that in his experience with the trial judge, the trial judge read and
considered every letter sent or provided to him.








We cannot say that Appellant
has overcome the strong presumption under the first prong of the Strickland
test that counsel acted reasonably.  The
letters were already before the trial judge, and Appellant has not shown what
additional testimony the authors might have provided had they been called as
witnesses.  Likewise, we cannot say that
the result of the proceeding would have been different under the second prong
of the Strickland test.  The
authors of both letters appear to presume that Appellant could be put back on
community supervision and thus able to attend 
a rehabilitation program.  But
after the trial court adjudicated guilt, Appellant was ineligible for community
supervision because the trial court found the habitual-offender notices to be
true.  See Tex. Penal Code Ann. ' 12.42(d) (Vernon
Supp. 2006) (setting minimum punishment at twenty-five years= imprisonment for felony when it is shown that defendant has two prior
felony convictions); Tex. Code Crim.
Proc. Ann. art. 42.12, ' (3)(e)(1) (Vernon Supp. 2006) (providing that defendant is ineligible
for judge-ordered community supervision when sentence exceeds ten years= imprisonment).

Similarly, testimony from
witnesses regarding Appellant=s employability  after drug
rehabilitation fails the second prong of the Strickland test.  Appellant was not eligible for community
supervision, could not be sentenced to attend rehabilitation as her only
punishment, and was facing a minimum sentence of twenty-five years in
prison.  Thus, what her employer said
about keeping her job open while Appellant attended rehabilitation could have
no meaningful relevance to, or substantial effect on the outcome of, the
punishment hearing.

Finally, we consider the
letter from a chaplain to the trial judge, in which the chaplain wrote that
Appellant was Asincere in
her desire for help,@ exhibited
positive changes, and Amade []
moves to become a profitable member of society.@  Like the letters from Cenikor
and Homeward Bound, counsel presented the chaplain=s letter to the trial court, and Appellant has failed to show that the
chaplain would have testified to anything not included in her letter.  Therefore, we cannot say that the chaplain=s testimony would have changed the outcome of Appellant=s punishment hearing.








Appellant cites Miller v.
Dretke, 420 F.3d 356 (5th Cir. 2005), for the proposition that counsel is
ineffective and his trial strategy is entitled to no deference when that
strategy is based on a complete failure to investigate evidence that would
mitigate punishment.  Miller is
distinguishable.  In that case, the
defendant claimed to suffer from a severe brain injury that affected her
behavior and her memory of the crime, but her attorney failed to contact or
call as punishment-phase witnesses any of the several physicians who were
treating the defendant for the injury.  Id.
at 358-59.  Only after the jury assessed
punishment did counsel contact and obtain letters from the doctors.  Id. at 359.  Counsel admitted in the defendant=s application for writ of habeas corpus that he should have
interviewed the doctors before trial and called them in mitigation of
punishment.  Id. at 359.  The Fifth Circuit concluded that the doctors= testimony would have been relevant and admissible, that the defendant=s counsel failed to make any effort to contact the doctors, that
counsel=s trial strategy, supported by a complete lack of investigation, was
constitutionally inadequate, and that but for counsel=s errors, her punishment would have been significantly less
harsh.  Id. at 362, 364, 365.








By contrast, counsel in this
case was aware of the letters from the treatment centers and the chaplain
before Appellant=s punishment
hearing, and he shared and discussed those letters with the trial judge before
the hearing.  Counsel testified that he
based his trial decision not to call the authors as witnesses based on his
prior experience with the trial judge. 
Unlike counsel=s trial
strategy in Miller, counsel=s decision in this case was not based on  a complete lack of investigation.  Finally, unlike the doctors= medical opinions in Miller, the statements made by the letters= authors in this case, all of which tacitly or explicitly urged
community supervision and drug treatment, would not have tended to make
Appellant=s punishment
significantly less harshCparticularly
when the trial judge, who assessed punishment, was already aware of the letters= contents.

We hold that Appellant has
failed to show by a preponderance of the evidence that her counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the punishment hearing would have been
different.  See Strickland, 466
U.S. at 687, 104 S. Ct. at 2064. 
Therefore, we overrule her sole point and affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL M:   GARDNER, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)








DELIVERED:  August 31, 2006











[1]See Tex. R. App. P. 47.4.





[2]Appellant=s
point is necessarily limited to the punishment phase of trial because article
42.12, ' 5(b)
of the code of criminal procedure, which prohibits an appeal from the trial
court=s
determination to proceed with an adjudication of guilt, prohibits even a claim
of ineffective assistance of counsel during the adjudication hearing.  See Tex.
Code Crim. Proc. Ann. art. 42.12, ' 5(b) (Vernon Supp. 2006);
Phynes v. State, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992).  But a defendant may claim ineffective
assistance during the punishment hearing immediately following the adjudication
of guilt.  See Kirtley v. State,
56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001).