JAMISON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NOS.  2-05-053-CR

        2-05-054-CR

        2-05-055-CR

KELLY DENISE JAMISON APPELLANT

A/K/A KELLY D. JAMISON

V.

THE STATE OF TEXAS STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Kelly Denise Jamison appeals from her two life sentences for two counts of possession of a controlled substance and her twenty-year sentence for fraudulent use or possession of identifying information.  In a single point, Appellant argues that her trial counsel rendered ineffective assistance at her punishment hearing after the trial court revoked her deferred adjudication community supervision.  We affirm.

Factual and Procedural Background

In two separate cases, grand juries indicted Appellant for possession of more than one gram but less than four grams of methamphetamine, and both indictments contained habitual-offender notices.  In a third case, a grand jury indicted Appellant on five counts of possession or use of identifying information with intent to defraud, and the indictment included an enhancement paragraph. Pursuant to plea bargains in all three cases, Appellant pleaded guilty to the charges and pleaded true to the habitual offender notices and the enhancement paragraph, and the trial court placed her on deferred adjudication community supervision for ten years in each case.

The State moved to proceed to adjudication in all three cases, alleging that Appellant, within three months of having been released from jail on community supervision, violated the conditions of community supervision by using a controlled substance and failing to report, to which Appellant pleaded true, and committing a new offense and failing to submit an undiluted urine sample for drug testing, to which Appellant pleaded not true.  The alleged new offense was another instance of possession or misuse of identifying information with intent to defraud.  The State offered evidence that police apprehended Appellant while she was forging checks and identification cards with a scanner, computer, printer, and laminating machine in a motel room that she had rented using false identification.  The trial court found all of the alleged community-supervision violations to be true except for the alleged failure to submit an undiluted urine sample.

The trial court proceeded to adjudication in all three cases, finding Appellant guilty of each charge and finding the habitual-offender and enhancement allegations to be true.  The court offered each side the opportunity to present punishment-phase evidence.  Appellant offered no evidence.  The trial court then sentenced Appellant to life imprisonment for each of the possession charges and twenty years’ imprisonment for the misuse-of-identification charge–the maximum sentence for each charge—with all of the sentences to run concurrently. 

Appellant’s counsel filed timely notices of appeal.  Appellant filed a pro se “Motion for Substitution of Attorneys” in this court, which we granted.  After Appellant’s new counsel filed Appellant’s brief asserting ineffective assistance of trial counsel, the State filed an unopposed motion asking this court to abate the appeal and remand to the trial court so that Appellant could file an out-of-time motion for new trial to develop her ineffective-assistance claims.  We granted the State’s motion and remanded the cases to the trial court. 

Appellant then filed motions for new trial in the trial court, and the trial court held an evidentiary hearing on the motions.  Three witnesses testified at the hearing.

First, Appellant’s one-time community supervision officer, Stacy Pickett, testified that Appellant was rejected by the Nexus drug-rehabilitation program, which Appellant was ordered to attend as a condition of community supervision, because she was not a resident of Dallas County as required by that program.  Efforts to place Appellant in another program came to a halt when Appellant violated another term of her community supervision by testing positive for illegal drugs. 

Appellant testified that after her arrest for violating the terms of her community supervision and before the trial court’s adjudication of guilt, she applied to and was accepted by two other drug-treatment programs, Homeward Bound and Cenikor.  She said that she told her trial counsel that she had been accepted by those programs, but he did not contact anyone at Homeward Bound or Cenikor regarding their willingness to testify on Appellant’s behalf at the punishment hearing.  A Cenikor representative sent a letter to the trial court concerning Appellant’s acceptance into the program, but according to Appellant, counsel told her that it was not necessary to call the author as a witness.  Appellant testified that she obtained a letter from her employer stating that the employer would hold her job while she was in rehabilitation and that she gave the letter to counsel.  She said that counsel gave the letter to the trial judge but did not call the employer as a witness. 

Finally, Appellant’s trial counsel testified at the hearing.  He testified that he was aware of letters sent to the trial judge by Cenikor and Homeward Bound regarding Appellant’s acceptance into their treatment programs, but he did not contact the authors of the letters or call them as witnesses at the punishment hearing.  Counsel stated that he also received a letter from a chaplain addressed to the trial judge stating that Appellant appeared sincere in her desire to obtain drug treatment and noting positive changes in Appellant’s character.  Counsel did not contact the chaplain.  Nor did counsel contact Appellant’s prior employers or call any prior employer as a witness.  Counsel testified that he discussed Appellant’s cases with the trial judge before the adjudication and punishment hearing, and that the trial judge offered sentences of twenty-five years for each of the possession charges and twenty years for the fraudulent identification charge.  Counsel stated that after he received the three letters in question, he told Appellant that he would discuss the letters with the judge to see if they would affect the judge’s offer.  He discussed the letters with the judge, and they did not affect the offer.  Counsel testified that he did not call the letters’ authors as witnesses because in his experience the trial judge always takes such letters into account just as though the authors had testified to the matters stated in the letters.  Counsel said that he told Appellant the judge had offered two twenty-five-year sentences, but if she rejected the offer, he could sentence her to life imprisonment. 

The trial court denied Appellant’s motion for new trial.  Appellant then filed a supplemental brief in this court, reurging her argument that she was denied effective assistance of counsel at the punishment phase of the revocation hearing because trial counsel failed to investigate mitigating circumstances and called no punishment-phase witnesses.
(footnote: 2) 

Discussion

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that her counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the trial would have been different.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Salinas v. State
, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); 
Mallett v. State
, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001); 
Thompson
 
v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
See Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  Review of counsel’s representation is highly deferential, and the reviewing court indulges a strong presumption that counsel’s conduct fell within a wide range of reasonable representation.  
Salinas
, 163 S.W.3d at 740; 
Mallett
, 65 S.W.3d at 63.
  
We presume counsel’s actions and decisions were reasonably professional and motivated by sound trial strategy.  
See Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); 
Matthews v. State
, 152 S.W.3d 723, 732 (Tex. App.སྭTyler 2004, no pet.)
.  Appellant has the burden of rebutting this presumption by presenting evidence illustrating why her trial counsel did what he did.  
Matthews
, 152 S.W.3d at 732.

The second prong of 
Strickland
 requires a showing that counsel’s errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable.  
Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, Appellant must show there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.  
Id.
 at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  
Id.
  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.  
Id.
 at 697, 104 S. Ct. at 2070.

Appellant argues that counsel was ineffective because he failed to reasonably investigate mitigating circumstances and failed to call witnesses who could testify about Appellant’s employment potential and desire to rehabilitate.  We disagree.

We first consider the letters from the treatment centers and counsel’s failure to call the letters’ authors as witnesses.  The Homeward Bound letter simply states that Appellant would be accepted into the Homeward Bound program within seventy-two hours “of release back into probation.”  The Cenikor letter states that Appellant met Cenikor’s admission criteria and was “ready to relinquish her negative lifestyle.”  Both letters are addressed to the trial court, and the Cenikor letter appears in one of the clerk’s records.  Counsel testified that he discussed the letters with the trial judge before the hearing; thus, we presume that the trial court was aware of the letters’ contents.  Neither letter reflects information significant to sentencing, and Appellant failed to show that the letters’ authors would have testified to any additional facts that would be relevant to sentencing.  Finally, counsel testified that in his experience with the trial judge, the trial judge read and considered every letter sent or provided to him.

We cannot say that Appellant has overcome the strong presumption under the first prong of the 
Strickland
 test that counsel acted reasonably.  The letters were already before the trial judge, and Appellant has not shown what additional testimony the authors might have provided had they been called as witnesses.  Likewise, we cannot say that the result of the proceeding would have been different under the second prong of the 
Strickland
 test.  The authors of both letters appear to presume that Appellant could be put back on community supervision and thus able to attend  a rehabilitation program.  But after the trial court adjudicated guilt, Appellant was ineligible for community supervision because the trial court found the habitual-offender notices to be true.  
See 
Tex. Penal Code Ann.
 §
 12.42(
d) (Vernon Supp. 2006) (setting minimum punishment at twenty-five years’ imprisonment for felony when it is shown that defendant has two prior felony convictions); 
Tex. Code Crim. Proc. Ann.
 art. 42.12, § (3)(e)(1) (Vernon Supp. 2006) (providing that defendant is ineligible for judge-ordered community supervision when sentence exceeds ten years’ imprisonment).

Similarly, testimony from witnesses regarding Appellant’s employability  after drug rehabilitation fails the second prong of the 
Strickland
 test.  Appellant was not eligible for community supervision, could not be sentenced to attend rehabilitation as her only punishment, and was facing a minimum sentence of twenty-five years in prison.  Thus, what her employer said about keeping her job open while Appellant attended rehabilitation could have no meaningful relevance to, or substantial effect on the outcome of, the punishment hearing.

Finally, we consider the letter from a chaplain to the trial judge, in which the chaplain wrote that Appellant was “sincere in her desire for help,” exhibited positive changes, and “made [] moves to become a profitable member of society.”  Like the letters from Cenikor and Homeward Bound, counsel presented the chaplain’s letter to the trial court, and Appellant has failed to show that the chaplain would have testified to anything not included in her letter.  Therefore, we cannot say that the chaplain’s testimony would have changed the outcome of Appellant’s punishment hearing.

Appellant cites 
Miller v. Dretke
, 
420 F.3d 356 (5th Cir. 2005), for the proposition that counsel is ineffective and his trial strategy is entitled to no deference when that strategy is based on a complete failure to investigate evidence that would mitigate punishment.  
Miller
 is distinguishable.  In 
that case, the defendant claimed to suffer from a severe brain injury that affected her behavior and her memory of the crime, but her attorney failed to contact or call as punishment-phase witnesses any of the several physicians who were treating the defendant for the injury.  
Id.
 at 358-59.  Only after the jury assessed punishment did counsel contact and obtain letters from the doctors.  
Id.
 at 359.  Counsel admitted in the defendant’s application for writ of habeas corpus that he should have interviewed the doctors before trial and called them in mitigation of punishment.  
Id
. at 359.  The Fifth Circuit concluded that the doctors’ testimony would have been relevant and admissible, that the defendant’s counsel failed to make any effort to contact the doctors, that counsel’s trial strategy, supported by a complete lack of investigation, was constitutionally inadequate, and that but for counsel’s errors, her punishment would have been significantly less harsh.  
Id
. at 362, 364, 365.

By contrast, counsel in this case was aware of the letters from the treatment centers and the chaplain before Appellant’s punishment hearing, and he shared and discussed those letters with the trial judge before the hearing.  Counsel testified that he based his trial decision not to call the authors as witnesses based on his prior experience with the trial judge.  Unlike counsel’s trial strategy in 
Miller
, counsel’s decision in this case was not based on  a complete lack of investigation.  Finally, unlike the doctors’ medical opinions in 
Miller, 
the statements made by the letters’ authors in this case, all of which tacitly or explicitly urged community supervision and drug treatment, would not have tended to make Appellant’s punishment significantly less harsh—particularly when the trial judge, who assessed punishment, was already aware of the letters’ contents.

We hold that Appellant has failed to show by a 
preponderance of the evidence that her counsel’s representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel’s deficiency, the result of the punishment hearing would have been different.  
See Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064.  Therefore, we overrule her sole point and affirm the trial court’s judgment.

ANNE GARDNER

JUSTICE

PANEL M: GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellant’s point is necessarily limited to the punishment phase of trial because 
article 42.12, § 5(b) of the code of criminal procedure, which prohibits an appeal from the trial court’s determination to proceed with an adjudication of guilt, prohibits even a claim of ineffective assistance of counsel during the adjudication hearing.  
See 
Tex. Code Crim. Proc. Ann.
 art.
 42.12, § 5(b) (Vernon Supp. 2006);
 Phynes v. State
, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992).  But a defendant may claim ineffective assistance during the punishment hearing immediately following the adjudication of guilt.  
See Kirtley v. State
, 56 S.W.3d 48, 51-52 (Tex. Crim. App. 2001).